# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERRY W. DILLON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-CV-05761 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| ALAN H. SHIFRIN AND ASSOCIATES, LLC, ) | |
| ALAN H. SHIFRIN, personally, ) | |
| STEPHEN FRANKLIN, personally, ) | |
| JOHN C. STURGEON, personally, ) | |
| TERRY SHAW, personally, and ) | |
| FLORENCE THICKLIN, personally ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the court is Jerry W. Dillon's second amended complaint. This marks Dillon's third effort to invoke this court's jurisdiction and his third completely different set of legal theories. This time he brings claims under the civil Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq. Because Dillon's claims fall within the ambit of the domestic-relations exception to federal question jurisdiction, the court dismisses this action.

## I. BACKGROUND

No matter the legal garb in which Dillon has clothed his claims, the same essential theme has run through them all. The defendants are Florence Thicklin a.k.a. Florence Mason ("Thicklin"),[1] who brought an action to determine parentage against Dillon in state court in 2000, three attorneys representing her, and their law firm. It is alleged that they have wrongfully and fraudulently sought to collect in Dillon's bankruptcy and in state court (and possibly in state

---

[1] The court employs the surname "Thicklin" because it appears in the most recently filed paper in this record. (*See* Pet. for Rule to Show Cause, ECF No. 15 App. B at B3.)

administrative proceedings), unpaid child support and attorney's fees Dillon allegedly owes. *See* Pet. for Rule to Show Cause, *Mason v. Dillon*, No. 00D650020 (Cook County Cir. Ct. filed Apr. 29, 2016), available in this record at ECF No. 19-1; *see also* Orig. Compl. ¶ 8, ECF No. 1. In a new twist, Dillon accuses Thicklin—for the first time in his second amended complaint—of perjury (for misstating the age of a minor) in what he terms a "directly related" administrative proceeding before the Illinois Department of Healthcare and Family Services. (2d Am. Compl. ¶ 59.)

Dillon pleaded state-law defamation and civil claims under 42 U.S.C. § 1983 in his original complaint. Defendants moved to dismiss Dillon's original complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Dillon amended his complaint before his deadline to respond to that motion. (*See* Mot. for Leave to Am. Compl., ECF No. 12; Order granting, ECF No. 14.) Dillon dropped his § 1983 and defamation claims in his amended complaint. Instead, he pleaded two claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1392 et seq.

Defendants again moved to dismiss, and the court granted their motion in part on April 28, 2017. This court dismissed Dillon's first amended complaint for lack of subject matter jurisdiction because his child support obligations do not meet the FDCPA's definition of a debt. The court gave Dillon leave to amend his complaint, which he has now done.

Dillon brings ten separately numbered counts in his second amended complaint. He precedes them with what he terms general allegations and the statement: "Plaintiff seeks to invoke the authority of the RICO statutes for damages associated with the unconscionable act, schemes and artifice committed by the hand of Alan H. Shifrin and Associates, LLC, et al." (2d Am. Compl. ¶ 27 (internal citation omitted).) Read in context with Dillon's general allegations,

Dillon claims that the Shifrin defendants violated a potpourri of federal criminal statutes by filing a baseless proof of claim (the same one at issue all along in this case) in bankruptcy court on October 28, 2014. (*See* 2d Am. Compl. ¶¶ 20, 29.) The following remaining counts then enumerate ten alleged violations of federal criminal law ranging from perjury in Counts Two and Six; attempting or conspiring to commit mail fraud in violation of 18 U.S.C. § 1349 in Counts Three and Eight; attempted obstruction of justice in Counts Four and Five; wire fraud in violation of 18 U.S.C. § 1341 in Count Seven; conspiracy to extort financial property in violation 18 U.S.C. § 875(b) and (d) in Count Nine; and an FDCPA violation in Count 9A.[2]

## II. LEGAL STANDARD

This court has an independent obligation to raise questions of its subject matter jurisdiction on its own initiative. *See, e.g.*, *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) ("[I]f the parties neglect the subject, a court must raise the jurisdictional question on its own." (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988))). As the party invoking federal jurisdiction, the plaintiff must establish that the court has subject matter jurisdiction. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015). When determining if subject matter jurisdiction is proper, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless [jurisdiction] is challenged as a factual matter." *Id*. (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)). If a defendant factually challenges the basis for federal jurisdiction, however, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the

---

[2] The second amended complaint has two Count Nines. The court refers to the second of these, beginning on page 18 as "Count 9A."

3

issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (alteration in original).

## III. ANALYSIS

The court first considers the ten counts of Dillon's complaint, which, with one exception, invoke criminal statutes, on their own terms. Also, Dillon's complaint can be construed as attempting to plead a RICO claim. The domestic-relations exception to federal jurisdiction bars that claim, however.

**A. Criminal Claims**

On their own terms, nine of Dillon's ten counts fail because they invoke federal criminal statutes. If there were any doubt about what Dillon seeks, he asks the court to "take Judicial notice to [sic] an indictment of criminal perjury, obstruction, and false claims" in his general allegations. (2d Am. Compl. ¶ 18.) He specifically asks the court to incarcerate defendants for 24 months in at least some of his counts. (*See id.* ¶ 20.) But "criminal provisions do not create private rights of action," so Dillon's claims fail to the extent he is trying to act as a private attorney general by making freestanding allegations that defendants violated federal criminal law. *El v. Redmon's Towing*, No. 13-cv-00300, 2014 WL 2510552, at *2 (N.D. Ill. June 2, 2014) (citing *Amin v. Int'l Servs., Inc.*, No. 13 C 7889, 2013 WL 6050154, at *2 (N.D. Ill. Nov. 14, 2013)) (holding plaintiff could not bring a private claim under 18 U.S.C. §§ 112 and 970).

Dillon also pleads an FDCPA claim as his last count. In its order dismissing his first amended complaint, the court held that Dillon's FDCPA claims were too insubstantial to invoke this court's federal-question jurisdiction because a child support obligation does not meet the FDCPA's definition of a "debt." Slip Op. at 7–8, ECF No. 49 (citing *Okoro v. Garner*, 21 F. App'x 486 (7th Cir. 2001) and *Battye v. Child Support Servs., Inc.*, 873 F. Supp. 103, 105–06

4

(N.D. Ill. 1994)). The FDCPA claim pleaded in Dillon's second amended complaint adds nothing new to the claims in his first amended complaint, so the court reaches the same conclusion on that count of Dillon's second amended complaint. *See id.*

**B. RICO Claim**

With the benefit of liberal construction, Dillon also attempts to bring a RICO claim in his second amended complaint. In specified circumstances, RICO allows a person to bring a private civil suit when its criminal provisions, *see* 18 U.S.C. § 1962, have been violated. *See* 18 U.S.C. §§ 1962, 1964(c); *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2098 (2016) ("RICO creates a private civil cause of action that allows '[a]ny person injured in his business or property by reason of a violation of section 1962' to sue in federal district court and recover treble damages, costs, and attorney's fees." (quoting § 1964(c)) (alteration in original)). Many, if not all, of the offenses Dillon claims occurred appear on RICO's list of predicate offenses. *See* 18 U.S.C. § 1961(1). With the benefit of liberal construction, then, the separately headed counts of Dillon's second amended complaint can be construed as the predicate acts for a RICO claim. (*See* 2d Am. Compl. ¶ 27 (suggesting this interpretation by citing RICO just before the list of counts begins).)

But even liberally construed, Dillon's second amended complaint must surmount two jurisdictional doctrines. He survives scrutiny on the first but not the second.

**1. The *Rooker-Feldman* Doctrine**

Under the *Rooker-Feldman* doctrine, "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 544 (7th Cir. 1999) (citations omitted). The show-cause proceedings

remain ongoing in state court, and Dillon's bankruptcy is, of course, not a proceeding in state court.³

Dillon's second amended complaint does not make entirely clear whether the state administrative proceeding in which he alleges the age of a minor was misstated remains open. It does not matter, however. "[T]he *Rooker–Feldman* doctrine is concerned only with state court determinations, it presents no jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)).

**2. The Domestic Relations Exception**

The domestic relations exception to federal jurisdiction recognizes that "domestic relations disputes have been traditionally left to the state courts, which have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling such issues." *Blair v. Supportkids, Inc.*, No. 02 C 0632, 2003 WL 1908031, at *2 (N.D. Ill. Apr. 18, 2003) (citations omitted); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 703–04 (1992); *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) ("State courts, moreover, are assumed to have developed a proficiency in core probate and domestic-relations matters and to have evolved procedures tailored to them, and some even employ specialized staff not found in federal courts."); *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (holding that exception applies when jurisdiction is

---

³ Because it finds the domestic-relations exception applies, the court need not reach the question of whether abstention would be appropriate under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See Kamtel, Inc. v. Bore Tech Constr., LLC*, No. 16-cv-633-bbc, 2017 WL 532337, at *7 (W.D. Wis. Feb. 9, 2017) (raising *Colorado River* doctrine on court's own motion based on persuasive, but not controlling, Seventh Circuit authority and because "several federal courts have raised the issue sua sponte" (citations omitted)). In exceptional circumstances, the *Colorado River* doctrine "allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding elsewhere." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814 (7th Cir. 2016) (citing *Colo. River*, 424 U.S. at 817).

based on the federal-question statute, 28 U.S.C. § 1331). As interpreted by the Seventh Circuit, a suit seeking "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support" falls within the exception's "core." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). The core casts a shadow ("penumbra") as well. *Id.* "[A]ncillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding" fall into the exception's shadow as well. *Id.*

This court need not wonder whether the amount of child support and attorney's fees Dillon allegedly owes could be litigated in an ancillary proceeding because such a proceeding is actually pending in state court. (*See, e.g.*, 2d Am. Compl. ¶ 2.) Many of the claims in the second amended complaint concern the filing of a petition for rule to show cause in a proceeding to determine a child's parentage; that petition seeks to enforce an order awarding child support issued in 2006 in the same case. Dillon seeks to litigate the amount he owes in this court. For instance, he asserts that had certain information not been withheld, "it would had [sic] meant even a further decrease in the [allegedly] fabricated document Shifrin filed on April 29, 2016," i.e., the petition for rule to show cause filed in state court. (2d Am. Compl. ¶ 54.) Dillon means, as nearly as the court can tell, that the amount of child support and attorney's fees he owes would be less. (*See id.*) The same holds for his claims concerning a proof of claim filed in bankruptcy court: Dillon claims that the proof of claim was invalid because he did not owe back child support and attorney's fees.

Because the amount, if any, of child support and attorney's fees Dillon owes can be, and is in fact being, litigated in a proceeding ancillary to a paternity action in state court, the

7

domestic relations exception prevents Dillon from using RICO (or anything else he can conjure up as a basis for federal-question jurisdiction) to litigate the same issues in federal court. *See Alpern v. Lieb*, 38 F.3d 933, 934 (7th Cir. 1994) (holding that the domestic relations exception, among other doctrines, barred suit for damages against the plaintiff's ex-wife, attorney, and judge who presided over divorce proceedings); *Ervin v. Ervin*, 571 F. App'x 464, 466 (7th Cir. 2014) (observing that suit attacking order to pay child support on due process grounds "probably" fell within the domestic relations exception); *O'Grady v. O'Grady*, 445 F. App'x 870, 872 (7th Cir. 2011) (holding domestic relations exception applied to bar claim that would have required district court to determine whether a 2006 ruling by a state court affected a 1997 child custody decree because it "would interfere with the child-custody process for a federal court to determine just what that change was"); *see also Allen v. Allen*, 48 F.3d 259, 261–62 (7th Cir. 1995) (holding domestic-relations exception applied to claim seeking to void, for lack of due process, custody and visitation orders issued by state court because the plaintiff in effect "challenge[d]the underlying custody decree"); *Dawaji v. Askar*, 618 F. App'x 858, 858–59, 860 (7th Cir. 2015) (holding domestic relations exception barred § 1983 action alleging that plaintiff's former husband and attorney coerced her into accepting settlement because "[i]f a [federal] district court adjudicated her request for damages, it would have to evaluate the merits of her request for larger payments for child support and maintenance and additional marital assets"). Additionally, Dillon does not appear to seek injunctive relief stopping the show-cause proceedings in state court, but if he did, the Anti-Injunction Act, 28 U.S.C. § 2283, would bar his way. *See Alpern*, 38 F.3d at 934.

The fact that Dillon attacks the underlying child support order by disputing the amount of child support and attorney's fees he owes deserves emphasis because a claim for "damages for

alleged prosecutorial misconduct arising from enforcement of a child-support order" does not fall within the domestic relations exception. *Warner v. Brown*, 670 F. App'x 420, 422 (7th Cir. 2016). In *Blair v. Supportkids, Inc.*, No. 02 C 0632, 2003 WL 1908031, at *3 (N.D. Ill. Apr. 18, 2003), the court contrasted the case with "a typical ancillary proceeding that would involve review of a divorce or support decree." Dillon's claims stem directly from such a "typical ancillary proceeding," that has been initiated in state court, however. Before this court, Dillon disputes the amount of back child support and attorney's fees he owes. In *Blair*'s words, adjudicating his RICO claims would require a determination of Dillon's "actual challenge" to his obligations to pay child support. *Id.; see also Sheetz v. Norwood*, 608 F. App'x 401, 404 (7th Cir. 2015) (observing that "the domestic-relations exception would bar Sheetz from seeking to 'void' the state court's custody orders" but holding that exception did not apply because he principally "attempt[ed] to litigate misconduct that occurred *outside* the state court proceedings"); *Giles v. Krumhorn*, No. 06 C 2517, 2006 WL 2224063, at *1 (N.D. Ill. Aug. 2, 2006) (holding domestic relations exception did not bar suit to collect unpaid child support where amount owed was not apparently disputed and concluding that abstention was warranted "[g]iven the comprehensive statutory scheme Illinois created for the enforcement and modification of maintenance decrees" (citing 750 ILCS 5/510, et seq.)).

## IV. CONCLUSION

Dillon has tried to allege a claim over which this court has jurisdiction three times. He has been unsuccessful each time. He abandoned his first effort under § 1983, failed in his second under the FDCPA, and has now failed in his third under RICO.[4] *See, e.g.*, *Jennings v. Auto*

---

[4] Dillon's RICO claims suffer from numerous fatal flaws. To cite but two examples, his predicate acts stemming from various kinds of fraud fail because he bases them on court filings, and "federal fraud charges cannot be based on the filing of court documents." *Nero v. Mayan Mainstreet Inv 1, LLC*, 645 F. App'x 864, 868 (11th Cir. 2016) (per curiam) (collecting cases and affirming dismissal of RICO claims for this reason). And pleading a single

*Meter Prods., Inc.*, 495 F.3d 466, 472–73 (7th Cir. 2007) (stating that courts examine RICO claims carefully in part to "forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety actions properly brought under state law" (quoting *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992))). He has had enough chances. The gravamen of his claims has remained the same. It is clear this court lacks jurisdiction over them.

For the reasons stated, Dillon's second amended complaint (ECF No. 51) is dismissed for lack of subject matter jurisdiction. The clerk is directed to enter judgment accordingly. Civil case terminated.

Date: June 8, 2017  /s/
Joan B. Gottschall
United States District Judge

---

scheme aimed at one person, even through multiple acts of fraud, does not state claim of a pattern of racketeering activity. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 475 (7th Cir. 2007) (holding plaintiff failed to state RICO claim because he identified only one victim); *see also Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir. 2006) (stating that RICO "demands more than a straightforward case of malicious prosecution . . . to open up its window to treble damages").